IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GARY ACCORD, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | ) NO. 3:21-cv-00077 |
| | ) JUDGE RICHARDSON |
| v. | )<br>) |
| ANDERSON COUNTY, TENNESSEE, et al. | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION

Pending before the Court is Defendant Cocke County's "Motion to Dismiss" (Doc. No. 117, "Motion"), and accompanying Memorandum of Law. (Doc. No. 118). Plaintiff filed a response (Doc. No. 132), and Defendant filed a reply. (Doc. No. 138). The Motion is ripe for review. For the reasons discussed below, Defendant's Motion will be granted.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

On June 29, 2018, Plaintiff, Gary Accord, was arrested by Tennessee Highway Patrolman Paul Kilday in Cocke County, Tennessee. (Doc. No. 103 at 7).[2] Kilday prepared a complaint-affidavit on a State of Tennessee Uniform Citation Form. (*Id.*). Plaintiff then was prosecuted using the Uniform Citation Form/Affidavit of Complaint as a charging instrument. (*Id.* at 8). Plaintiff

---

[1] The facts as stated are taken from the Amended Complaint and accepted as true for purposes of the Motion.

[2] When citing herein to a page in a document filed by one of the parties, it endeavors to cite to the page number ("Page __ of __") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document.

was charged with a DUI, which was eventually reduced to reckless endangerment. (*Id.*). He was sentenced to 11 months and 29 days in jail, with a suspended sentence. (*Id.*).

Plaintiff filed the present case on February 1, 2021 as a class action complaint against every county in Tennessee (but no one else).[3] Thereafter, he filed an Amended Complaint against the same Defendants, which asserted (in Counts I-III) several claims under 42 U.S.C. § 1983 for various kinds of alleged violations of the Fourth, Sixth, and Fourteenth Amendments, as well as a Tennessee common law claim for false light invasion of privacy (in Count IV).

Upon motion of Plaintiff (Doc. No. 94), the Court dismissed Counts II and III. This left remaining a single count asserting claims under Section 1983 (as well as the state-law claim in Count IV). That count (Count I) was styled as one for violations of the Fourth, Sixth and Fourteenth Amendments to the U.S. Constitution and of Tennessee Constitution Article I, Section 7.[4]

Various Defendants then filed motions to dismiss, including the present Motion whereby Defendant Cocke County (and various other counties) requested dismissal of Plaintiff's claims under Fed. R. Civ. P. 12(b)(6). Ultimately, during its review of some of these motions, the Court determined that Plaintiff had failed to establish standing to bring a claim against any Defendant *except* Cocke County. (Doc. No. 168 at 11). Accordingly, the Court ordered that all Defendants

---

[3] Thus, every Defendant was a Tennessee county, and every Tennessee county was a Defendant.

[4] The reference to the Tennessee Constitution was so cursory that the Court doubts that Plaintiff actually was serious about asserting a claim under it. To the extent that Plaintiff was serious about that, he should not have been, since it is entirely clear that there is no such thing as a private cause of action for damages under the Tennessee Constitution. *See Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) (citing *Lee v. Ladd*, 834 S.W.2d 323 (Tenn. Ct. App.), *appeal denied*, (Tenn.1992)) ("Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution."); *Arbuckle v. City of Chattanooga*, 696 F. Supp. 2d 907, 932 (E.D. Tenn. 2010) (" . . . there is no private right of action for damages based on alleged violations of the Tennessee Constitution."); *Odom v. Claiborne Cty., Tennessee*, 498 S.W.3d 882, 888 (Tenn. Ct. App. 2016) (upholding a trial court's determination that there is no implied cause of action for violations of the Tennessee Constitution). So Defendant is entitled to dismissal on any such claim to the extent that it was indeed raised.

except Cocke County be dismissed (and administratively terminated as parties)[5] and that the present Motion remain pending only as to Cocke County. (Doc. No. 169).

Cocke County, the sole remaining Defendant, subsequently filed a purported "supplement" to its Motion, requesting dismissal under Rule 12(b)(3) based on allegedly improper venue, or alternatively, a transfer of venue to the Eastern District of Tennessee pursuant to 28 U.S.C. § 1406(a). (Doc. No. 172). The Court treated the supplemental filing as an independent motion but declined to dismiss on the basis of improper venue, as venue remained proper in this district as to Cocke County under 28 U.S.C. § 1391(b)(1). However, the Court did inform the parties that it was considering *sua sponte* transferring the case to the Eastern District of Tennessee under 28 U.S.C. § 1404(a). (Doc. No. 176). Both parties were given the opportunity to provide notice to the Court of their position regarding the potential transfer. (*Id.*). In doing so, Plaintiff suggested that the Court should refrain from transferring venue until it had ruled on the present Motion (Doc. No. 177), and Defendant did not oppose this suggestion. (Doc. No. 178). Accordingly, the Court will proceed with consideration of Defendant's Motion for dismissal under Rule 12(b)(6).

## STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause

---

[5] One of the dismissed Defendants, Knox County, was not immediately terminated as a party in the relevant order due to a pending Motion for Sanctions it had filed. (Doc. No. 168 at 11). However, upon Knox County's withdrawal of the sanctions motion, it was also terminated as a Defendant. (Doc. No. 173).

of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary

judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir.2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## DISCUSSION

In its Motion, Defendant brings multiple arguments for why Plaintiff's claims should be dismissed. Defendant's first argument is that "Plaintiff's claims are barred by Tennessee's one-year statute of limitations."[6] (Doc. No. 118 at 4). Defendant states that Plaintiff's causes of action

---

[6] The undersigned will highlight a few important points regarding the terminology used herein, by reference to something he wrote years ago:

> On the subject of limitations, courts often use language loosely, interchanging various terms for one another. For maximum clarity, terms must be defined so that important concepts are distinguishable from one another, then used consistently in accordance with those definitions. Herein, legal authorities will be paraphrased in terms of the following definitions to convey the concepts expressed therein, regardless of the terms used (or misused) by the authority being cited.

> As used herein, a "statute of limitations" refers to a legislative enactment, or codification thereof, that sets forth a limitations period . . .. A "limitations period" refers to the length of time-the specific number of days, months, or years-in which a given claim can be commenced, as set forth in a statute of limitations. "Limitations" [refers] to the legal doctrine whereby a plaintiff is barred from bringing a claim based upon the lapse of the applicable limitations period. To say that limitations "applies" is to say that, under limitations law, a claim is time-barred. "Limitations law" refers to the entire body of rules,

accrued on June 29, 2018, the date on which he was arrested or "*at the latest*, on December 3, 2018 – the date of Plaintiff's guilty plea to the charge resulting from said arrest." (*Id.* at 5) (emphasis in original). Defendant argues that causes of action under 42 U.S.C. § 1983 are subject to the same limitations period as Tennessee personal injury actions, which is one year. Additionally, Defendant contends that Plaintiff's state-law claim brought pursuant to the Tennessee Government Tort Liability Act ("TGTLA") is also subject to a one-year limitations period.[7] As Plaintiff did not file this action until February 1, 2021, his claims would be time-barred if they accrued on either June 29, 2018, December 3, 2018, or any date before February 1, 2020.

In response, Plaintiff argues that "when the underlying conduct is the fact that Defendant counties lacked jurisdiction to proceed because there were no proper charging instruments that commenced the criminal proceedings, then a statute of limitations defense does not apply." (Doc. No. 132 at 13) (citing *State v. Ferrante*, 269 S.W.3d 908 (Tenn. 2008)). This statement is very problematic from the get-go; it suggests that the absence of jurisdiction can constitute "conduct," (which is non-sensical). Overlooking that, the Court construes Plaintiff here to mean that (i) his claims in this Court are based on Defendant prosecuting him in the underlying case despite the

---

both statutory and judge-made, by which courts determine whether limitations applies in a given case.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1017–19 (1997). When using his own words, the undersigned intends to stick generally to this terminology, with the caveat that the case law and briefing of the parties he quotes may not do so and thus may be less precise or looser in their terminology.

[7] While Plaintiff's Amended Complaint does not expressly state that his common law claim is brought under the TGTLA, the Court infers such from the fact that the TGTLA is the only statute waiving a government entity's immunity for injuries caused during the performance of government functions in Tennessee. Tenn. Code Ann. § 29-20-201(a) ("Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.").

absence of jurisdiction resulting from the fact that there was no proper charging instrument against him; and (ii) *Ferrante* indicates that a statute-of-limitations defense does not apply to such claims. If the Court's construction is correct—and the Court strongly believes that it is—Plaintiff's reliance on *Ferrante* (made, tellingly, without a pinpoint cite) is so completely unjustified that the Court strongly suggests that counsel ensure that he never again make such a baseless citation in a brief filed with a court. *Ferrante* has nothing at all to do with whether a statute-of-limitations defense applies to civil claims; it has nothing at all to do with civil litigation. It involved solely a criminal prosecution (for DUI), and its discussion of the criminal statute of limitation there at issue plainly is of no relevance whatsoever in the civil context. And it did not say, even in the particular context of criminal cases, anything about when a statute-of-limitations defense categorically does *not* apply; instead, it was focused merely on whether the particular criminal defendant involved in that case happened to have a valid statute-of-limitations defense (which he did). *Id.* at 915. The Court is at a loss as to how *Ferrante* could have been cited for the proposition for which it was cited.

Then, harkening back to his above-quoted assertion that his claim is based on "the fact that Defendant counties lacked jurisdiction to proceed," Plaintiff then states that "[a] party can never waive or forfeit a challenge based on lack of subject-matter jurisdiction." (*Id.* at 22). For this proposition, he first cites *United States v. Cotton,* 535 U.S. 625, 630 (2002), and *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990)). These cases are patently irrelevant because they are referring to a challenge to a federal court's subject-matter jurisdiction to hear a case under Article III of the U.S. Constitution, and Plaintiff (and, for that matter Defendant) clearly is not making any such challenge. He then cites four Tennessee state cases (dealing at most with the jurisdiction of Tennessee state courts under Tennessee law) that supposedly support this

proposition. Regardless of the extent to which these state cases support the proposition that "[a] party can never waive or forfeit a challenge based on lack of subject-matter jurisdiction," they fail to support Plaintiff's overarching argument here, which is that Defendant is not permitted to assert a statute-of-limitations defense;[8] even if a party "can never waive or forfeit a change based on lack of subject matter jurisdiction [in a state court under state law]," that in no way means that a statute-of-limitations defense cannot be raised to claims filed in a federal court under federal law and procedure. And this reality is in no way altered by the alleged fact that the filed claims supposedly have something to do with an underlying factual scenario purportedly involving some kind of lack of subject-matter jurisdiction in a state court.

In short, Plaintiff's argument about the alleged automatic inapplicability of a statute-of-limitations defense here is entirely without merit. Thus, the Court proceeds to determine whether Defendant in fact has established a valid statute-of-limitations defense even at this very early stage.

As this Court has previously noted

> The general rule is that statute-of-limitations defenses are more properly raised in Rule 56 motions for summary judgment, rather than Rule 12(b)(6) motions, because a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim. *Jones v. Invasix Inc.*, No. 3:19-cv-0860, 2020 WL 2542603, at *10 (M.D. Tenn. May 19, 2020). However, if it is apparent from the face of the complaint that the time limit for bringing the claim has passed, then the plaintiff, if she wishes to avoid dismissal, has an obligation to plead facts in avoidance of the statute of limitations defense. *Id.*

---

[8] As Plaintiff summarizes his position, "when the basis of a § 1983 claim is that the underlying courts that entered judgments or convictions against the Plaintiff and the putative class lacked subject matter jurisdiction to begin with, no affirmative defenses—statute of limitations or otherwise—apply." (Doc. No. 132 at 23). This Court declines, for reasons discussed, to take the extraordinary step of announcing that Plaintiff somehow has discovered a way in which (by asserting a particular kind of underlying circumstances) a Section 1983 plaintiff can avoid all affirmative defenses. To put it mildly, the Court declines to declare off limits for defendants, based on particular underlying factual allegations by plaintiff, strategies as basic as asserting absolute immunity, which is, after all, an affirmative defense. *See, e.g., Holloway v. Brush*, 220 F.3d 767, 795 n.10 (6th Cir. 2000) (Clay, J., dissenting) (referring to "the affirmative defense of absolute immunity.").

*Am. Addiction Centers, Inc. v. Nat'l Ass'n of Addiction Treatment Providers*, 515 F. Supp. 3d 820, 840 n.11 (M.D. Tenn. 2021). "The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997)). In Tennessee, the limitations period for Section 1983 claims is one year. *Jordan v. Blount Cnty.*, 885 F.3d 413, 415 (6th Cir. 2018) (citing Tenn. Code Ann. § 28-3-104(a)). And the limitations period for TGTLA claims is also one year. Tenn. Code Ann. § 29-20-305.

As the undersigned noted years ago, "[a] limitations period generally begins to run from the time the cause of action 'accrued.'" Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1036 (1997). Yet, "the date of accrual is not necessarily synonymous with the date that the limitations period begins to run; the limitations period begins to run from the date of accrual only to the extent that applicable law says so." *Id*. "As it turns out, applicable law usually does say so; by judicial decision, by a general statute relating to the running of limitations periods, or by language in the particular statute of limitations itself, a statute's limitations period usually runs from the date of accrual." *Id*. at 1036-37. Here, the Court has no doubt that the rule is that the limitations period generally begins to run from the date of accrual,[9]

---

[9] An exception to this general rule applies in the event of one of the two circumstances that are referred to as "tolling." As the undersigned previously has noted:

> [t]he term "tolling" is used two different ways. First, "tolling" often refers to a postponement of the date the statute begins to run, usually the accrual date. By contrast, some courts use the term "tolling" to refer to suspending the running of the limitations period after it already has begun to run. Some tolling provisions cannot be placed comfortably in either tolling category, and some tolling provisions can either postpone the starting of the clock or stop it after it begins running, depending upon the timing of the event that triggers the tolling. Nevertheless, the distinction exists and is analytically important.

and thus for purposes of the general rule treats the date of accrual as synonymous with the date of the beginning of the running of the limitations period, consistent with how federal courts so often essentially equate the two dates. *See*, *e.g.*, *D.S.S. by & through McDowell v. Prudential Ins. Co. of Am.*, No. 21-5315, 2022 WL 95165, at *4 (6th Cir. Jan. 10, 2022) ("[On December 31, 2014, the cause of action accrued . . . and the [one-year] limitations period began to run. Thus, the district court did not err in determining that the cause of action accrued on December 31, 2014, and that the limitations period ran one year after that date."); *Bishop v. Children's Ctr. For Dev. Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010) (noting that while for some statutes the statute of limitations is "borrowed from state law, the actions accrue and the statutory period begins to run according to federal law").

Accordingly, the question of whether Plaintiff's claims are barred by the statute of limitations hinges on when his causes of action accrued. "[T]he accrual date for a § 1983 claim is governed by federal law." *Cox v. City of Jackson, Tenn.*, 811 F. App'x 284, 288 (6th Cir. 2020) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). The Sixth Circuit utilizes the "discovery rule" and "[a]s a result, a § 1983 claim 'does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, both his injury and the responsible party.'" *Id.* (quoting *Hall v. Spencer Cnty. Ky.*, 583 F.3d, 930 933 (6th Cir. 2009)).[10] "This objective inquiry

---

Eli J. Richardson, *supra*, at 1039-1040. In the present case, neither kind of "tolling" appears implicated. On the other hand, this case does involve something close to the first kind of tolling. Although nothing *postpones* the otherwise applicable accrual date in this case (as would be the case for the first kind of tolling), the applicable accrual rule in this case (the discovery rule) itself builds in a postponement of the accrual date (*i.e.*, until the time of "discovery") to the beginning of the running of the limitations period that otherwise might not occur if the "standard" accrual rule (discussed in a footnote below) were used instead.

[10] In 2019, the Supreme Court compared the "standard rule" of accrual—where "the limitations period commences when the plaintiff has a complete and present cause of action"—to the "discovery rule." *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) (quoting *Graham County Soil & Water Conservation Dist.*

asks 'what event should have alerted the typical lay person to protect his or her rights.'" *Id* (quoting *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005)). Similarly, in Tennessee, a cause of action accrues "when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *Gibson v. Trant*, 58 S.W.3d 103, 117 (Tenn. 2001) (quoting *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998)).

As noted above, Defendant argues that Plaintiff's causes of action accrued either on June 29, 2018 (when he was arrested) or on December 3, 2018 (when he pled guilty to a lesser offense).[11] The Court is inclined to agree. All of Plaintiff's claims rely on the same alleged facts and theory: that the Affidavit of Complaint used to prosecute Plaintiff was not a proper charging instrument and that "[n]o arrest warrant/charging instrument was ever prepared or signed by any official of the General Sessions Court of Cocke County, Tennessee" so Plaintiff was

---

*v. United States ex rel. Wilson*, 545 U.S. 409, 418–419 (2005)). The Supreme Court said an "expansive approach to the discovery rule is a bad wine of recent vintage." *Id.* (quotation omitted). However, the Sixth Circuit recently declined to overturn the usage of the discovery rule as applied to Section 1983 claims. *Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1162 (6th Cir. 2021) ("Our § 1983 caselaw, by contrast, has started the accrual analysis with the competing discovery rule: that the claim accrues when the plaintiff knows of, or should have known of, that cause of action. Do our cases imbibing this 'bad wine' warrant reconsideration in light of the Supreme Court's recent teachings? We need not resolve this tension now . . .").

[11] Plaintiff's arrest date of June 29, 2018 comes directly from his Amended Complaint. (Doc. No. 103 at 7). His guilty plea date of December 3, 2018 comes from Plaintiff's guilty plea form provided by Defendant in its Motion. (Doc. No. 118-1 at 2). As mentioned above, the Court can rely on public records in considering a Rule 12(b)(6) motion, including those motions raising statute-of-limitations arguments. *See New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (relying on a public record to determine the plaintiff's claims were barred by the statute of limitations). Other courts have noted that the record of a guilty plea, like the one in question, is a public record. *See Allen v. Hanover Ins. Grp.*, No. 2:19-CV-12024, 2021 WL 607101, at *3 (E.D. Mich. Jan. 14, 2021); *Flanigan v. Cty. of Oakland*, No. 15-12504, 2016 WL 304763, at *1 (E.D. Mich. Jan. 26, 2016); *Washington v. Rice*, No. 3:14-CV-01143, 2015 WL 10434534, at *1 (M.D. Tenn. Oct. 10, 2015), *report and recommendation adopted,* No. 3:14-CV-1143, 2016 WL 863995 (M.D. Tenn. Mar. 7, 2016*).* Additionally, in his response, Plaintiff made no challenge to the accuracy or reliability of the document in question. Thus, the Court can and does take judicial notice of the date Plaintiff entered his guilty plea.

unconstitutionally prosecuted. (Doc. No. 103 at 7). The latest point that Plaintiff (or his defense counsel) should have become aware that no proper charging instrument was being utilized to prosecute Plaintiff was the day he entered his guilty plea: December 3, 2018. *See generally Pittman v. City of Jackson*, No. 19-1187-JDT-CGC, 2019 WL 4179533, at *2 (W.D. Tenn. Sept. 3, 2019) ("A warrant that is devoid of any signature is a defect that is immediately obvious from the face of the document. If the original warrant was, indeed, unsigned by anyone at all, then Pittman and/or his trial counsel in the criminal matter should have been aware of the deficiency.").

Rather than make an argument that the correct accrual date was within a year of the date Plaintiff filed this action, Plaintiff asserts that "[c]ourts determine when the statute of limitations bars an action by determining when a prosecution is commenced" and that because no prosecution was ever "properly commenced" then "there is no cognizable date" the action accrued. (Doc. No. 132 at 21). To support his argument, Plaintiff cites to *State v. Grieco*, which says, "In order to determine whether the prosecution is barred by the statute of limitations, we must first determine when the prosecution was commenced." No. E201501110CCAR3CD, 2017 WL 956345, at *2 (Tenn. Crim. App. Mar. 10, 2017). This quote makes clear Plaintiff's mistake: perhaps the determination of when a *criminal prosecution* is barred by the statute of limitations is properly based on the date when the prosecution was commenced, but as discussed above, a determination of when a *civil cause of action* is barred by the statute of limitations is based upon when a party knew or should have known of his injury—and this reality is not altered in those situations where a civil cause of action is in turn based on an underlying criminal prosecution. Here, Plaintiff makes no argument that he could not have known of his injuries until February 1, 2020, the date on or after which his claims must have accrued to not be time-barred given his filing date of February 1, 2021. Nor does Plaintiff's Amended Complaint allege any disability that would have prevented

him (or his counsel) from understanding the documents used to charge him, or from reasonably investigating their validity.

Plaintiff's additional argument that the statute-of-limitations defense cannot apply to his claims because he is (supposedly) challenging the subject-matter jurisdiction of the state court is unpersuasive for the reasons discussed above. Finally, in a last-ditch argument for why a limitations defense would be futile, Plaintiff states, "Even if Plaintiff's § 1983 claims were precluded by the statute of limitations . . . Plaintiff and the putative class could then directly challenge their unconstitutional convictions, as direct constitutional challenges are available when § 1983 is not." (Doc. No.132 at 11). Plaintiff provides no citations to case law supporting this theory, nor would he be likely to find any. In fact, Plaintiff has failed to mention copious authority from within this circuit that is on point and directly contrary to his unsupported position here, As the undersigned has previously noted,

> In *Thomas*, the Sixth Circuit addressed whether it should continue to recognize direct constitutional claims against local officials and municipalities as it had prior to the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which held that municipalities are "persons" within the meaning of Section 1983. *Thomas*, 818 F.2d at 499. The Sixth Circuit's answer to that question was no—in the aftermath of *Monell*, Section 1983 is the exclusive remedy for such claims. *See id*. The Sixth Circuit held that it is "unnecessary and needlessly redundant to imply a cause of action arising directly under the Constitution where Congress has already provided a statutory remedy of equal effectiveness through which the plaintiff could have vindicated her constitutional rights." *Id.* at 500. Following this rationale, the Sixth Circuit held that given the Supreme Court's holding in *Monell*, the plaintiff could no longer bring a direct cause of action against a municipality under the Constitution and 28 U.S.C. § 1331; Section 1983 provided the exclusive remedy. *Id*. at 503.

*Roath v. Lee*, No. 3:17-CV-00995, 2019 WL 3066533, at *7 (M.D. Tenn. July 12, 2019), *aff'd*, *Roath v. Elliott*, No. 19-6072, 2021 U.S. App. LEXIS 14100 (6th Cir. May 12, 2021); *see also Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014) (citing *Thomas v. Shipka*, 818 F.2d 496, 503 (6th Cir. 1987)) ("To the extent that Appellants attempt to assert direct constitutional claims,

they fail; we have long held that § 1983 provides the exclusive remedy for constitutional violations.").

In the Sixth Circuit post-*Monell*, Section 1983 is Plaintiff's exclusive means of bringing claims for constitutional violations against a municipality, like Cocke County. But as discussed above, Plaintiff failed to bring his claims within the one-year limitations period applicable to Section 1983 claims filed in Tennessee's federal courts. Accordingly, Plaintiff's Section 1983 claims are barred by the statute of limitations. Plaintiff's state-law claim under the TGTLA likewise is subject to a one-year limitations period and is therefore barred. As Plaintiff's claims will be dismissed in accordance with Defendant's statute-of-limitations argument, the Court declines to consider Defendant's other bases for dismissal outlined in its Motion.

## CONCLUSION

For the reasons indicated herein, one-year limitations apply to each of Plaintiff's claims. Defendant Cocke County's Motion to Dismiss will be granted. Accordingly, Plaintiff's claims will be **DISMISSED with prejudice**.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE